# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JOANNA R. MANUEL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-14-239-SPS** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **ACTING Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

The claimant Joanna R. Manuel requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security

regulations implement a five-step sequential process to evaluate a disability claim. *See*

20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision

to two inquiries: whether the decision was supported by substantial evidence and whether

correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th

Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"

*Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v.*

*NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th

Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th

Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of

evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on February 3, 1983, and was twenty-nine years old at the time of the administrative hearing (Tr. 30, 106). She has a GED and a CNA certificate, and has worked as a certified nurse assistant and telemarketer (Tr. 30, 40). The claimant alleges that she has been unable to work since November 12, 2010 due to bulging discs in her neck, depression, anxiety, and migraines (Tr.123, 126).

## Procedural History

On April 29, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 106-07). Her application was denied. ALJ Doug Gabbard, II conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 27, 2013 (Tr. 12-21). The Appeals Council denied review; thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. § 404.1567(c). He further found the claimant could perform unskilled work that needed little or no judgment to do simple duties and that could be learned on the job in a short amount of time. Additionally, he found the claimant

required simple, direct, and concrete supervision; interpersonal contact with supervisors and co-workers incidental to the work performed; and no contact with the general public. The ALJ concluded that, although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the regional and national economies, *e. g.*, dishwasher and laundry worker (Tr. 21).

## Review

The claimant contends that the ALJ erred by: (i) failing to find her back pain and neck pain were severe impairments at step two, (ii) failing to order a consultative physical examination, and (iii) improperly assessing her RFC. The undersigned Magistrate Judge agrees with the claimant's third contention.

The ALJ found the claimant had the severe impairments of affective mood disorder and anxiety disorder, then found her back pain, neck pain, and headaches were nonsevere (Tr. 14-15). The medical evidence reveals that the claimant was taken to St. Edward Mercy Medical Center via ambulance on November 11, 2010, following a motor vehicle accident (Tr. 198). A CT scan of her head revealed soft tissue swelling over her anterior scalp; CT scans of her cervical spine, chest, abdomen and pelvis showed no abnormalities (Tr. 200-01). She was diagnosed with cervical strain and abdominal pain (Tr. 198). Six days later, on November 17, 2010, the claimant presented to ProMed Main Clinic with complaints of headache pain, left ribcage pain, anxiety, sleep disturbance, and a sense of "fuzziness" (Tr. 218). Dr. Eugene Alexander assessed her with post-concussion syndrome with persistent headache, anxiety post trauma, and insomnia (Tr. 218). He prescribed medications for pain and anxiety (Tr. 218-19). Two weeks

later, on December 2, 2010, the claimant presented to Dr. Sanjay Khemka with complaints of back pain and anxiety (Tr. 227). Dr. Khemka's examination showed tenderness in her thoracic spine and rib cage (Tr. 228). He prescribed medications for pain and anxiety (Tr. 227).

On March 17, 2011 the claimant presented to the emergency room at Mercy Hospital with back and neck pain (Tr. 287). Physical examination revealed bilateral pain with range of motion and strength testing and an MRI of her cervical spine showed one millimeter anterolisthesis at C2-3, posterior spurring and bulge at C4-5, small disk protrusion with mild impression on the thecal sac at C5-6, and mild right posterolateral bulge at C6-7 (Tr. 301).

During a surgical evaluation on March 24, 2011, Dr. Joseph Queeny noted the claimant had adequate grip strength of the left hand, varying grip strength of the right hand, diminished reflexes bilaterally in her biceps with full strength, absent reflexes bilaterally in her triceps with full strength, and pain in her suboccipital region with passive range of motion testing (Tr. 235). After reviewing the imaging, he concluded the small disc bulges were "essentially normal," the left sided disk herniation at C5-6 was "about the size of a grain of rice," and that neither condition was surgically significant (Tr. 235). He diagnosed the claimant with cervicalgia and cervical sprain and recommended further conservative treatment (Tr. 235).

State reviewing physician Dr. Luther Woodcock completed a Physical Residual Functional Capacity Assessment on July 26, 2011 wherein he opined that the claimant was capable of medium work, *i. e.*, she could lift fifty pounds occasionally, twenty-five

pounds frequently, and could sit/stand/walk for about six hours in an eight-hour workday with unlimited pushing and pulling (Tr. 262-69).

The claimant presented to the Good Samaritan Clinic on December 13, 2011, January 24, 2012, August 13, 2012, and October 16, 2012, with complaints of neck pain, and was prescribed medication (Tr. 333, 334, 336, 337). Physical examination revealed guarding and stiffness in her head and neck on January 24, 2012 and tenderness and limited range of motion in her shoulders and neck on August 13, 2012 (Tr. 334, 336). X-rays of her cervical spine conducted on January 17, 2012 showed a slight curvature to her spine, but were otherwise normal (Tr. 275).

On July 18, 2012, the claimant presented to the emergency room at Sparks Regional Medical Center for neck and bilateral shoulder pain (Tr. 316). Physical examination revealed moderate bilateral shoulder tenderness, decreased range of motion in her shoulders due to pain, upper extremity weakness, and an antalgic gait (Tr. 309). She was administered a pain shot and prescribed pain medication (Tr. 316). An MRI of her cervical spine performed that day revealed mild dextroscoliosis and early degenerative changes, but was otherwise normal (Tr. 327). She was diagnosed with neck pain/strain and torticollis (Tr. 310).

The claimant began a course of six chiropractic treatments on November 27, 2012 which she completed on December 21, 2012 (Tr. 280-86). Dr. Kyle Jarnigan noted some improvement, but opined her prognosis was poor (Tr. 282, 284, 285). The claimant rated her symptoms at nine prior to treatment and rated them at five after treatment (Tr. 280, 286).

Evidence submitted to the Appeals Council included treatment records from The Health and Wellness Center in Poteau, Oklahoma. On April 15, 2013, the claimant presented to nurse practitioner Linda J. Hoffman for neck pain, back pain, and depression (Tr. 346). Physical examination revealed limited range of motion bilaterally in her shoulders and neck as well as limited flexion and extension of her spine (Tr. 348). Ms. Hoffman assessed the claimant with multiple muscle strains, prescribed medication for pain, and recommended stretching exercises and alternating heat and ice for discomfort (Tr. 348). She also recommended a pain management referral; however, the claimant reported she could not afford pain management (Tr. 349). At a May 13, 2013 follow up, the claimant reported continuing shoulder pain and limited range of motion despite compliance with stretching exercises (Tr. 353, 356). Physical examination revealed limited rotation of shoulders bilaterally, pain with adduction, inability to extend arms, and a weak left grip. Ms. Hoffman assessed the claimant with arthralgia of the head/neck/trunk and cervicalgia. Additionally, she referred the claimant to an orthopedic specialist and refilled her pain medication (Tr. 358).

At the administrative hearing, the claimant testified she could do minor household chores for five to ten minutes before needing to sit down (Tr. 35-36). She further stated she is unable work because of frequent absences and limited physical capabilities (Tr. 36-37). She testified the pain in her neck and shoulders is constant, she experiences migraines twice per week, and that her pain interferes with her sleep (Tr. 37-38). As to specific limitations, she testified she could not stand on her feet two hours out of an eight-hour day or sit six hours straight out of an eight-hour day (Tr. 37-38).

In his written opinion, the ALJ discussed the claimant's function report, some of the hearing testimony, and some of the medical evidence. At step two, he found the claimant's back pain, neck pain, and headaches were nonsevere impairments and supported his findings by mentioning Dr. Queeny's recommendation of further conservative treatment over surgery; noting the claimant's treatments were limited to emergency room visits, office visits, and chiropractic care; and by stating in a conclusory manner that the medical record did not substantiate the frequency or severity of her headaches (Tr. 15); however, he did not discuss her nonsevere impairments at step four.

The claimant argues that the ALJ erred by failing to classify her back pain, neck pain, and headaches as severe impairments. Because the ALJ found that the claimant suffered from the severe impairments of affective mood disorder and anxiety disorder, any failure to find the claimant's back pain, neck pain, and headaches severe at step two would ordinarily be harmless error because the ALJ would nevertheless be required to consider the effects of the impairments and account for them in formulating the claimant's RFC at step four. *See, e.g., Carpenter v. Astrue,* 537 F.3d 1264, 1266 (10th Cir. 2008) (" 'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.''), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123–24 (10th Cir.2004), *quoting* 20 C.F.R. § 404.1523). *See also Hill v. Astrue,* 289 Fed. Appx. 289,

292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two.  His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.' ") [emphasis in original] [citations omitted].  The error here *was not* harmless, however, because the ALJ failed to account for the claimant's nonsevere impairments in assessing her RFC, instead adopting a state reviewing physician opinion that pre-dated much of the evidence related to her physical impairments.  Additionally, the ALJ failed to properly assess the combined effect of all the claimant's impairments—both severe and nonsevere—in assessing her RFC.  *See id.* (In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.' ") [emphasis in original]; *McFerran v. Astrue,* 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]").

The claimant's contention that the ALJ failed to properly evaluate all the medical evidence is bolstered by evidence submitted to the Appeals Council after the hearing,

which included the treatment records from The Health and Wellness Center in Poteau, Oklahoma revealing the claimant's continued limited range of motion, inability to afford pain medication, and referral to a specialist. The Appeals Council was required to consider this evidence if it is: (i) new; (ii) material; and, (iii) "related to the period on or before the date of the ALJ's decision." *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004), *quoting Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995). The parties do not address whether the evidence submitted by the claimant after the hearing qualifies as new, material, and chronologically relevant, but the Appeals Council *did* consider it (Tr. 8), and the Court has no difficulty concluding that it does qualify.

Evidence is new if it "is not duplicative or cumulative." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003), *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991). These records were not made available to the ALJ prior to his decision, and in fact provide more detail regarding her physical impairments than was previously a part of the record; thus it was neither duplicative nor cumulative. Second, evidence is material "if there is a reasonable possibility that [it] would have changed the outcome." *Threet*, 353 F.3d at 1191, *quoting Wilkins*, 953 F.2d at 96. The evidence must "reasonably [call] into question the disposition of the case." *Id. See also Lawson v. Chater*, 1996 WL 195124, at *2 (10th Cir. April 23, 1996). In discounting the claimant's physical impairments, the ALJ did not even address her nonsevere impairments at step four. But the records indicated that the claimant's physical impairments significantly affected her ability to function, and are therefore clearly material. Finally, the evidence is chronologically relevant because it pertains to the time

"period on or before the date of the ALJ's Decision." *Kesner v. Barnhart*, 470 F. Supp. 2d 1315, 1320 (D. Utah 2006), *citing* 20 C.F.R. § 404.970(b). The claimant meets the insured status through December 31, 2014, so all of the records are relevant to the claimant's condition as to the existence or severity of her impairments. *See Basinger v. Heckler,* 725 F.2d 1166, 1169 (8th Cir. 1984) ("[M]edical evidence of a claimant's condition subsequent to the expiration of the claimant's insured status is relevant evidence because it may bear upon the severity of the claimant's condition before the expiration of his or her insured status."), *citing Bastian v. Schweiker,* 712 F.2d 1278, 1282 n.4 (8th Cir. 1983); *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983); *Dousewicz v. Harris,* 646 F.2d 771, 774 (2d Cir. 1981); *Poe v. Harris,* 644 F.2d 721, 723 n. 2 (8th Cir. 1981); *Gold v. Secretary of H.E.W.,* 463 F.2d 38, 41-42 (2d Cir. 1972); *Berven v. Gardner,* 414 F.2d 857, 861 (8th Cir. 1969).

The evidence presented by the claimant after the administrative hearing thus *does* qualify as new and material evidence under C.F.R. §§ 404.970(b) and 416.1470(b), and the Appeals Council considered it, so the newly-submitted evidence "becomes part of the record . . . in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." *Chambers*, 389 F.3d at 1142, *citing O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). In light of this new evidence, the Court finds that the decision of the Commissioner is not supported by substantial evidence because the ALJ had no opportunity to perform a proper analysis of the newly-submitted evidence in accordance with the authorities cited above, and the Commissioner's decision must therefore be reversed and the case remanded for further proceedings. On remand, the ALJ should re-

assess the claimant's RFC in light of the new evidence, and then re-determine the work she can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 29th day of September, 2015.

_____

**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**